**Complaint of CONSOLIDATION COAL COMPANY as Owner of the Motor Vessel Donna Lee II**

**and**

**Robert L. Price and Rosemary E. Price, Plaintiffs,**

v.

**Consolidated Coal Company, Inc., Saturn Bronze, Inc., J & C Towing, Inc., W.W. Patterson Company, WEG Electric Motors, Inc. d/b/a WEG Industries, d/b/a WEG Manufacturing Co., d/b/a WEG Corporation and Reliance Manufacturing, Inc., d/b/a Reliance Industries, Inc., d/b/a Reliance Electric, Defendants.**

No. CIV.A. 5:99–CV–113, CIV.A. 5:00–CV–197.

United States District Court, N.D. West Virginia.

Sept. 27, 2001.

---

5. *See supra* note 2 regarding undisputed facts in analysis of the bonus.

Rodger L. Puz, Dickie, McCamey & Chilcote, Pittsburgh, PA, Scott D. Clements, Dickie, McCamey & Chilcote, Wheeling, PA, for Petitioner.

Stephen J. Dalesio, Gaca, Mtis, Baum & Rizza, Pittsburgh, PA, fir W.W. Patterson Co.

Erin R. Brewster, MacCorkle, Lavender & Casey, PLLC, Charleston, WV, Michael M. Fisher, Offutt, Fisjer & Nord, Huntington, WV, for WEG Electric Motors, Inc.

Michael B. Victorson, J. Rudy Martin, Jackson & Kelly, Charleston, WV, for Reliance Electric Motors, Inc.

John E. Gompers, Gompers, McCarthy, Hill & McClure, Wheeling, WV, Donald J. Tennant, Jr., Wheeling, WV, Christopher D. Kuebler, Dennis M. O'Bryan, O'Bryan,

Baun & Cohen, Birmingham, AL, for Robert L. Price, Rosemary E. Price.

Arthur Bloom, Margolis Edelstein, Pittsburgh, PA, for J&C Towing Services, Inc.

Rhonda L. Wade, Neiswonger & White, Moundsville, WV, for Saturn Bronze, Inc.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

STAMP, District Judge.

### I. *Procedural History*

On November 20, 2000, plaintiffs Robert L. Price and Rosemary E. Price filed a complaint in admiralty in this Court and on December 22, 2000, the plaintiffs filed a first amended complaint in admiralty. On February 9, 2001, this Court entered an agreed order for the consolidation of Civil Action Nos. 5:00CV197 and 5:99CV113. The plaintiffs' case was consolidated with a previous case filed by Consolidation Coal Company relating to the plaintiffs' claims, which were originally filed in state court. Consolidation Coal Company had filed a complaint for exoneration from or limitation of liability.

Currently pending before this Court are the motions to dismiss of defendants, W.W. Patterson Company and WEG Electric Motors, Inc. ("defendants"). Defendant W.W. Patterson Company filed a motion to dismiss the following parts of the plaintiffs' amended complaint: Part IV 4, ¶¶ 53–59; Part C ¶¶ 62–64 and the damages claimed on behalf of plaintiff, Rosemary Price in ¶ 67; and Part IV 3, ¶¶ 51–52. The plaintiffs then filed a brief in opposition to defendant W.W. Patterson Company's motion to dismiss. Defendant WEG Electric Motors, Inc. then filed a joinder in the motion to dismiss of W.W. Patterson Company. Defendant W.W. Patterson Company filed a reply brief. The plaintiffs then filed a brief in opposition to defendant WEG Electric Motors, Inc.'s motion to dismiss.

### II. *Facts*

The complaint at issue is the plaintiffs' first amended complaint in admiralty filed on December 22, 2000. The plaintiff, Robert Price, claims that he was injured on one of Consolidation Coal Company, Inc.'s ships, the M/V Donna Lee II on March 20, 1998. The plaintiffs claim that subject matter jurisdiction in this case is premised upon 28 U.S.C. § 1333, which grants district courts original jurisdiction, exclusive of the courts of the states of any civil case of admiralty or maritime jurisdiction. Diversity jurisdiction does not exist in this case.

The plaintiffs brought suit against Consolidation Coal Company, Inc., the shipowner and Robert Price's employer pursuant to the Jones Act, 46 U.S.C. app. § 688 (West Supp.1999), as well as a claim for unseaworthiness under general maritime law. The plaintiffs also brought several claims against the non-shipowner defendants who manufactured and supplied what plaintiffs claim to be a defective mechanical winch system that was on board the tug Donna Lee II. The non-shipowner defendants who have filed motions to dismiss include W.W. Patterson Company, the designer, manufacturer, supplier, and/or installer of the electric winch which formed part of the mechanical system installed by defendants Saturn Bronze, Inc. and/or defendant J & C Towing, Inc. aboard the Donna Lee II and defendant WEG Electric Motors, Inc., who was the designer, manufacturer, supplier, and/or installer of the electric motor on the winch which formed part of the mechanical winch system. Defendants W.W. Patterson Company and WEG Electric Motors now move this Court to dismiss Part IV 4, ¶¶ 53–59 of the plaintiffs' amended complaint, which set forth claims of breach of

express and/or implied warranties of merchantability and fitness for a particular purpose under the Uniform Commercial Code ("U.C.C."). The plaintiff claims that he was injured as a result of a breach of these warranties. The defendants further move this Court to dismiss Part C, ¶¶ 62–64 and the damages claimed on behalf of plaintiff Rosemary Price in ¶ 67. Part C of the amended complaint sets forth a loss of consortium claim on behalf of plaintiff Rosemary Price. Finally, the defendants move this Court to dismiss Part IV 3, ¶¶ 51–52 of the amended complaint, which sets forth a claim for punitive damages.

### III. *Rule 12(b)(6) Standards*

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations contained in the complaint as true. *See Advanced Health–Care Servs., Inc. v. Radford Community Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if " 'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.' " *Id.* at 143–44 (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969)).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 294 (2d ed.1990) (citations omitted). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. *See id.* § 1356, at 298. For purposes of the motion to dismiss the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). *See id.* § 1357, at 304, 310.

As many courts have stated, the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *See id.* § 1357, at 321. As this district court noted in *Williams v. Wheeling Steel Corp.*, 266 F.Supp. 651, 654 (N.D.W.Va. 1967), "[t]he plaintiff's burden in resisting a motion to dismiss for failure to state a cause of action is a relatively slight one."

### IV. *Discussion*

#### A. *The Breach of Warranty Claims*

The defendants' first argument is that the amended complaint fails to state any valid claim for breach of express or implied warranties under the U.C.C. The defendants cite *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In that case, the Court held "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss." *Id.* at 876, 106 S.Ct. 2295. The defendants point this Court to Footnote 7 which states:

> If the [plaintiffs'] claims were brought as breach-of-warranty actions, they would not be within the admiralty jurisdiction. Since contracts relating to the construction of or supply of materials to a ship are not within the admiralty jurisdiction, *see Thames Towboat Co. v. The Schooner "Francis McDonald"*, 254 U.S. 242, 243, 41 S.Ct. 65, 66, 65 L.Ed. 245 (1920); *Kossick v. United Fruit Co.*, 365 U.S. at 735, 81 S.Ct. at 889, neither are warranty claims grounded in such contracts. *See* 1E Benedict, *Admiralty* § 188, 11–36 (7th ed.1985). State law would gov-

ern the actions. *See North Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.,* 249 U.S. 119, 127, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1919). In particular the Uniform Commercial Code, which has been adopted by 49 States, would apply. *Id.* at 872 n. 7, 106 S.Ct. 2295. The defendants thus contend that it is clear that the plaintiffs' claims for alleged violations of the U.C.C. are not within this Court's admiralty jurisdiction.

The plaintiffs respond that the electronic winch system involved in this litigation was provided to the M/V Donna Lee II while it was undergoing repair, not while it was under construction and, therefore, the contract is considered to be a maritime contract by law. The defendants do not dispute the fact that the contract at issue is a repair contract rather than a contract relating to the construction of or supply of materials to the ship.

 It is well established that a contract for repair is a maritime contract and a contract for original construction of a ship is not such a contract. *See New Bedford Dry Dock Co. v. Purdy,* 258 U.S. 96, 99, 42 S.Ct. 243, 66 L.Ed. 482 (1922). Thus, contracts for repair are governed by admiralty principles and to the extent that it is not inconsistent with admiralty principles, state contract law may be applicable to maritime contracts. *See Ham Marine, Inc. v. Dresser Indus., Inc.,* 72 F.3d 454, 459 (5th Cir.1995). Although the plaintiffs do not specifically allege in their complaint the type of contract at issue, the defendants do not dispute that this is essentially a contract for repair, rather than for original construction. For the purposes of this motion to dismiss, this Court will construe the complaint in the light most favorable to the plaintiffs. Therefore, the contract at issue is maritime in nature and is, therefore, governed by general federal maritime law. *See Southworth Machinery Co. v.*

*F/V Corey Pride,* 994 F.2d 37, 41 n. 3 (1st Cir.1993). Further, the U.C.C. is considered a source for federal admiralty law. *See id.; see also Princess Cruises, Inc. v. General Elec. Co.,* 143 F.3d 828, 832 (4th Cir.1998) (stating that "U.C.C. principles inform admiralty law"); *Interpool Ltd. v. Char Yigh Marine (Panama) S.A.,* 890 F.2d 1453, 1459 (9th Cir.1989) ("In maritime commercial transactions, the Uniform Commercial Code is taken as indicative of the federal common law of admiralty.").

The defendants next argue that even if the plaintiffs' claims were within the subject matter jurisdiction of this Court, no relief could be granted because they are barred by the statute of limitations. The defendants argue that under West Virginia law, pursuant to *Taylor v. Ford Motor Co.,* 185 W.Va. 518, 408 S.E.2d 270, 274 (1991), personal injury claims based on breach of either an express or implied warranty under the U.C.C. are subject to the two-year statute of limitations prescribed in West Virginia Code § 55-2-12. The defendants contend that because the plaintiffs brought their claims more than two years after the alleged injury, they are barred from bringing these claims.

 The plaintiffs argue, on the other hand, that because this case exists under general maritime law, the doctrine of laches applies, which admiralty law has traditionally applied to provide the limitation period for contract actions. This Court agrees that the equitable doctrine of laches governs the time to sue in an admiralty case. *See TAG/ICIB Servs., Inc. v. Pan Am. Grain Co.,* 215 F.3d 172, 175 (1st Cir.2000); *see also Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.,* 234 F.3d 1225, 1230 (11th Cir.2000). "Under equitable principles the statute of limitations applicable to analogous actions at law is used to create a 'presumption of laches.' This principle 'presumes' that an action is

barred if not brought within the period of the statute of limitations and is alive if brought within the period." *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365 (6th Cir.1985) (citations omitted). In admiralty claims, an analogous statute of limitations is used as a benchmark in determining whether to apply the doctrine of laches. *See Venus Lines Agency, Inc.,* 234 F.3d at 1230.

The plaintiffs contend that in order to maintain uniformity in maritime law, the most analogous statute of limitations is embodied in 46 U.S.C. app. § 763a, which provides a three-year statute of limitations. This provision states that "[u]nless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued." 46 U.S.C. app. § 763a. The plaintiffs argue that even though this provision is typically applied to maritime tort jurisprudence, it has been applied in contract actions as the most analogous for purposes of resolving the laches issue.

The plaintiffs cite *McKinney v. Waterman Steamship Corp.,* 925 F.2d 1 (1st Cir.1991), wherein the court of appeals upheld the district court's conclusion that the federal uniform maritime tort limitations period prescribed in 46 U.S.C. app. § 763a, was the most analogous statute of limitations period for the contractual claim at issue. However, the First Circuit did state that it was not important to decide whether the district court properly selected the § 763a three-year limitations period as the relevant benchmark because Massachusetts law also provides that a three-year limitations period applies to "actions of contract to recover for personal injuries." *See id.* at 3 (citing Mass. Gen. Laws Ann. ch. 260 § 2A).

As stated above, the defendants claim that the two-year statute of limitations provision contained in West Virginia Code § 55–2–12 bars the plaintiffs' claim, which was filed more than two years, but less than three years, after the alleged injury. In *Taylor v. Ford Motor Co.,* 185 W.Va. 518, 408 S.E.2d 270, 274 (1991), the court held that "where a person suffers personal injuries as a result of a defective product and seeks to recover damages for these personal injuries based on a breach of express or implied warranties, the applicable statute of limitations is the two-year provision contained in W. Va.Code, 55–2–12, rather than the four-year provision contained in our U.C.C., W. Va.Code, 46–2–725." The court reasoned that a plaintiff injured by a defective product frequently will sue under multiple theories of recovery, such as strict liability in tort, and breach of express and implied warranties, and therefore, it is desirable to have a uniform period of limitations. *See id.* at 273. Thus, the court gave warranty claims "all of the benefits of the tort statute of limitations rules." *Id.* at 274.

The reasoning behind the *Taylor* decision persuades this Court to apply the limitations period in 46 U.S.C. app. § 763a, rather than the limitations period in West Virginia Code § 55–2–12, in order to maintain uniformity under federal admiralty law. Just as the *Taylor* court determined that "[w]here the damages sought are traditionally associated with a tort injury, . . . it is more reasonable and realistic to place warranty theories under the two-year tort personal injury statute of limitations," *id.* at 274, this Court finds that it is more reasonable and realistic to place breach of warranty claims that result in personal injury under the three-year tort statute of limitations set forth in federal admiralty law. Both the uniform statute of limitations for maritime torts and the Jones Act

have a three-year limitations period. *See* 46 U.S.C. app. § 763a, *Riddick v. Baltimore Steam Packet Co.*, 374 F.2d 870, 871 (4th Cir.1967) (acknowledging that a cause of action asserted under the Jones Act is barred by the three-year statute of limitations); *Clauson v. Smith*, 823 F.2d 660, 661 (1st Cir.1987) ("The Jones Act ... incorporates by reference the three-year limitations period contained in the Federal Employers' Liability Act (FELA), 45 U.S.C. § 56.").

This Court agrees with the plaintiffs' argument that in order to avoid the discrepancy of conflicting statute of limitations periods under the laws of the states, and to assure uniformity, the three-year statute provided under federal admiralty law must apply. Because this Court has found that the plaintiffs have filed their claims for breach of express and implied warranties within the analogous statutory period, the burden of proving unreasonable delay and prejudice falls on the defendants. *See TAG/ICIB Servs. Inc.*, 215 F.3d at 175. The defendants did not address the issue of the doctrine of laches in their briefing and, therefore, because this Court finds that the defendants did not meet their burden of proving unreasonable delay and prejudice, the plaintiffs are not barred from bringing their warranty claims. Accordingly, the defendants' motion to dismiss Part IV 4 ¶¶ 53–59 of the amended complaint is DENIED.

### B. *The Loss of Consortium Claim*

The defendants next argue that the amended complaint fails to state a claim for loss of consortium on behalf of Rosemary Price. The defendants cite *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), to support their contention that the wife of a Jones Act seaman may not bring a loss of consortium claim under general maritime law against non-employer defendants. In *Miles*, the mother and administratrix of a Jones Act seaman, who was murdered on board a ship on which he was working, sought damages for loss of society from the vessel's operators, the charterer, and the owner of the vessel. *See id.* at 21, 111 S.Ct. 317. In order to restore uniformity, the court held that because the Death on the High Seas Act and the Jones Act preclude recovery for loss of society, there is also "no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." *Id.* at 33, 111 S.Ct. 317. The Court stated that "[t]oday we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA [Death on the High Seas Act], the Jones Act, or general maritime law." *Id.* The Court also held that because the estate of the seaman "cannot recover for his lost future income under the Jones Act, it cannot do so under general maritime law." *Id.* at 36, 111 S.Ct. 317.

The defendants cite *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426 (9th Cir.1994), to support their contention that *Miles* also applies to a wife's claim against a defendant who did not employ her husband. In *Davis*, the Ninth Circuit held that the estate of a seaman who perished on the high seas could not recover damages for lost future earnings in a general maritime survival action against a non-Jones Act defendant. *See id.* at 430. The court stated that "there is nothing in *Miles*' reasoning to suggest that the decision turned upon the identity of the defendant." *Id.* The defendants stress that the principle of uniformity expressed by the Supreme Court in *Miles* requires that Rosemary Price's loss of consortium claim be dismissed.

The plaintiffs argue in response that *Miles* never addressed the issue of whether the spouse of a Jones Act seaman may obtain as a remedy loss of consortium un-

der the general maritime law against a non-shipowner/non-employer. The plaintiffs contend that the cases cited by the defendants are wrongly decided because they misinterpret *Miles.* The plaintiffs argue that this Court should apply the West Virginia law relating to loss of consortium because the Supreme Court has stated that state law remedies which do not conflict with maritime uniformity can be incorporated into the general maritime law. *See Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 116 S.Ct. 619, 628, 133 L.Ed.2d 578 (1996).

In *Yamaha,* the parents of a 12–year old girl who died in a jet ski accident sued the manufacturer and distributor of the jet ski under negligence, strict liability, and breach of warranty theories, seeking damages for loss of future earnings, loss of society, loss of support and services, and punitive damages. *See id.* at 202, 116 S.Ct. 619. The issue before the Court was whether the federal maritime claim for wrongful death recognized in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), supplies the exclusive remedy in cases involving the death of non-seafarers in territorial waters. *See id.* at 205, 116 S.Ct. 619. The Court rejected the argument that state remedies can no longer supplement general maritime law as they routinely did before *Moragne. See id.* 116 S.Ct. at 629. The Court held that "[w]hen Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided," but state law properly governs where Congress has not prescribed specific remedies. *Id.* 116 S.Ct. at 628.

This Court agrees with the plaintiffs that the uniformity principle of *Miles* should not be applied so broadly as the defendants suggest. In the case of *In re Petition of Cleveland Tankers, Inc.,* 843 F.Supp. 1157, 1159 (E.D.Mich.1994), the court held that family members of a deceased Jones Act seaman may recover non-pecuniary damages in a wrongful death action under the general maritime law from a defendant who is not his employer. The court stated that it "believes that loss of consortium damages remain viable under general maritime law, except as specifically held otherwise by *Miles.*" *Id.* The court explained that its "ruling that loss of consortium is recoverable would not be anomalous with *Miles,* given that no statute exists to preclude this type of damages." *Id.* at 1160. The defendants in *Cleveland Tankers* were not Jones Act employers and, therefore, the court was not presented with a situation where a Jones Act employer's liability would differ depending on whether the plaintiff pursued statutory remedies or relief under general maritime law. *See id.*

The Court in *Miles* found that it would be inconsistent if the wife of a seaman could not recover damages for loss of society if she sued under the Jones Act, but could recover such damages under a general maritime claim for death resulting from unseaworthiness. *See Miles,* 498 U.S. at 32, 111 S.Ct. 317. The Court reasoned that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault then Congress has allowed in cases resulting from negligence." *Id.*

■ In this case, the plaintiffs cannot sue the non-employer defendants under the Jones Act and, therefore, must maintain a claim under general maritime law. Thus, as stated in *In re Denet Towing Serv., Inc.,* No. Civ. A. 98–1523, Civ. A. 98–1583, 1999 WL 329698, at *2 (E.D.La. May 21, 1999), "there is no need for uniform treatment of an employer and a third-

party tortfeasor where is no statutory remedy that is different than the general maritime law remedy." This Court finds that this reasoning is consistent with the teaching of *Yamaha*, where the Court held that when Congress has not prescribed specific remedies, state remedies can be used to supplement general maritime law. *See Yamaha Motor Corp.*, 516 U.S. at 215, 116 S.Ct. 619. Further, the Fourth Circuit has held that "[w]hen no federal statute or well-established rule of admiralty exists, admiralty law may look to the common law or to state law, either statutory or decisional, to supply the rule of decision." *Princess Cruises, Inc.*, 143 F.3d at 834. Accordingly, this Court finds that the plaintiffs have stated a claim for loss of consortium upon which relief can be granted since West Virginia law permits recovery for loss of consortium, and defendants' motion to dismiss Part C, ¶¶ 62–64 and the damages claim on behalf of Rosemary Price in ¶ 67, is DENIED.

## C. *The Punitive Damages Claim*

For the same reasons that this Court finds that the plaintiffs have stated a claim for loss of consortium, this Court finds that the plaintiffs have also stated a claim for punitive damages. In the case of *In re Horizon Cruises Litigation*, 101 F.Supp.2d 204, 214 (S.D.N.Y.2000), the court held *Yamaha* makes clear that the uniformity principle that Congressional admiralty legislation will displace state law and admiralty remedies, does not keep away the common law *unless* Congress has spoken. In *Horizon Cruises*, passengers on a pleasure cruise, who had contracted Legionnaires' Disease, sued the manufacturers and distributors of an allegedly defective filter used in a whirlpool spa system that was located on the cruise ship. *See id.* at 206. The court traced the long history of punitive damages in admiralty law and permitted these passengers to seek punitive damages. The Court explained that *"Yamaha*

taught that unless Congress prescribed a comprehensive tort recovery scheme for a class of maritime actions, admiralty remedies could be supplemental by those available under state law." *Id.* at 213 (examining *Taylor v. Costa Cruises, Inc.*, No. 90 Civ. 2630 (S.D.N.Y. March 13, 1996) (Hon. Allen G. Schwartz)).

In this case, the Jones Act plaintiffs are suing non-employer defendants, and therefore, their claims do not lie under the Jones Act, or under any other statute, but under general maritime law. This Court agrees with the reasoning in *CEH, Inc. v. F/V Seafarer*, 70 F.3d 694 (1st Cir.1995), a pre-*Yamaha* case which permitted a non-Jones Act plaintiff to seek punitive damages under general maritime law. The First Circuit held that "in the absence of any relevant legislation, we think that the uniformity principle enunciated in *Miles* is inapplicable" and "[t]herefore, plaintiffs are entitled to forms of relief traditionally available under general maritime law, including punitive damages." *Id.* at 702. The court explained that "[t]he concern expressed in *Miles* ... was not with respect to an award of nonpecuniary damages in maritime cases in general, but with inconsistency with Congressional pronouncement." *Id.* Because this Court finds that the plaintiffs have a right to assert a claim for punitive damages upon which relief can be granted since punitive damages may be recovered under West Virginia law, the defendants' motion to dismiss Part IV 3 ¶¶ 51–52 of the amended complaint is DENIED.

## V. *Conclusion*

For the foregoing reasons, defendants W.W. Patterson Company and WEG Electric Motors, Inc.'s motions to dismiss Part IV 4 ¶¶ 53–59, Part C ¶¶ 62–64 and the damages claimed on behalf of plaintiff

Rosemary Price in ¶ 67, and Part IV 3 ¶¶ 51–52 is hereby DENIED.

IT IS SO ORDERED.

The Clerk is directed to transmit copies of this order to counsel of record herein.